1  **McNULTY LAW FIRM**
2  827 Moraga Drive
3  Bel Air, California 90049
   Telephone: (310) 471-2707
4  Facsimile: (310) 472-7014
5  Peter J. McNulty, SBN: 89660
   peter@mcnultylaw.com
6  Brett L. Rosenthal, SBN: 230154
7  brett@mcnultylaw.com

8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10

11  AMY ROBERTS, individually and on    CASE NO.:
12  behalf of all others similarly situated,
                                        CV 12-00319
13              Plaintiff,               CLASS ACTION

14       vs.                            COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF
15  CARRIER IQ, INC., a Delaware          (1) Violation of the Federal Wiretap
16  corporation, HTC AMERICA, INC. and        Act, 18 U.S.C. § 2511
    DOES 1 through 100, Inclusive,
17                                        (2) Violation of the Stored Electronic
18              Defendants.                    Communications Act, 18 U.S.C. §
                                               2701
19
                                          (3) Violation of the Computer Fraud
20                                             and Abuse Act, 18 U.S.C. § 1030
21                                        (4) Violation of California's Unfair
22                                             Competition Law, Cal. Bus. &
                                               Prof. Code § 17200, et seq.
23

24

25

26

27

28



                                        1
─────────────────────────────────────────────────────────
            CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Amy Roberts, on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this class action suit against CARRIER IQ, INC. ("CARRIER IQ" or "CIQ"), HTC America, Inc. ("HTC") and DOES 1 through 100, inclusive, (collectively "Defendants").

## NATURE OF ACTION AND FACTUAL ALLEGATIONS

1. This is a Class Action lawsuit brought by, and on behalf of, similarly situated individuals who purchased and used HTC cellular phones running the Android operating system from November 23, 2009 through November 23, 2011 ("Class Period"), which contained the software program Carrier IQ ("monitoring software") developed by Carrier IQ, Inc. ("CIQ") on the devices.

2. Upon information and belief, each and every HTC cellular phone running the Android operating system that was purchased in the United States during the Class Period, came equipped with the monitoring software preinstalled on the phone.

3. Upon information and belief, the monitoring software was preinstalled on Plaintiff's cellular phones by HTC and/or CIQ, respectively, and was provided to HTC by CIQ for that purpose.

4. The monitoring software was loaded onto Plaintiff's cellular phones prior to the Plaintiff's purchases of her cellular phones, and was loaded onto the subject phones without the Plaintiff's knowledge, consent or permission.

5. In fact, even after Plaintiff's purchased her cell phones, she was not told of the presence of the monitoring software on her phones.

6. Upon information and belief, CIQ developed the monitoring software to intercept, track, record, and log the activities, keystrokes, button presses, and searches, including, but not limited to, the user's searches, emails, dialed phone numbers, location, text messages, and Google searches.

7. The monitoring software is known in technical circles as a "rootkit," which is software that enables continued privileged access to a computer while actively hiding its

2

presence from administrators by subverting standard operating system functionality or other applications. (http://en.wikipedia.org/wiki/Rootkit)

8. Defendants have designed the monitoring software to run on Plaintiff's cellular phones in such a manner as to be completely undetectable.

9. Defendants have designed the monitoring software in such a manner that Plaintiff was not given the option to opt out of the "services" it provides. Moreover, Plaintiff was unable to opt out of the "services" provided.

10. None of the information Defendants obtained via the monitoring software was obtained with the Plaintiff's knowledge, permission or consent.

11. Upon information and belief, the monitoring software performed as intended by CIQ and HTC during usage during the Class Period, that is the monitoring software remained hidden and without permission from Plaintiff intercepted, recorded and logged nearly all of Plaintiff's activities and communications and transmitted some, or all, of this data to CIQ or HTC without Plaintiff's knowledge, consent, or permission.

12. HTC and CIQ configured the monitoring software such that it did not notify Plaintiff of its activities via "permissions" requests or otherwise.

13. The aforementioned manner in which the monitoring software was designed, installed and configured is contrary to the "Privacy Policy" statements maintained by HTC and CIQ.

14. The monitoring software was designed to evade detection and did so until the end of November 2011, when independent security researcher, Trevor Eckhart ("Eckhart"), discovered the monitoring software's existence and activities. Eckhart posted his findings on his website, despite the threat of litigation by CIQ intended to suppress the public disclosure of its monitoring software and keep its activities concealed from the Plaintiff.

15. Defendants' willful and knowing actions violated the Federal Wiretap Act, the Stored Electronic Communication Act, and the Federal Computer Fraud and Abuse Act. The

1   Plaintiff seeks damages and injunctive relief under these statutes on behalf of the entire
2   Class for these violations.

3   **THE PARTIES, JURISDICTION AND VENUE**

4   16. At all times material, Plaintiff, Amy Roberts, was a resident of Los Angeles County,
5       California and is otherwise *sui juris*.

6   17. Defendant, Carrier IQ, Inc., is a foreign corporation with its principal place of business
7       located at 1200 Villa Street, Suite 200 Mountain View, California 94041.

8   18. Defendant, HTC America, Inc., is a foreign corporation with its principal place of business
9       located at 13920 S.E. Eastgate Way, Suite 400, Bellevue, Washington 98005. Defendant,
10      HTC America, Inc. is authorized to conduct business, and conducts business, in the State
11      of California.

12  19. Plaintiff is unaware of the true names of DOES 1 through 100, who are individuals or
13      entities who conspired with or aided and abetted HTC and/or CIQ or otherwise involved
14      in and liable for the installation, use, and maintenance of the software on Plaintiff's and
15      the proposed class' mobile devices and operating to intercept Plaintiff's and proposed
16      class' private and sensitive data without mobile phone user knowledge or consent.
17      When the identity of these individuals or entities sued as Doe defendants are identified,
18      Plaintiff reserves the right to amend her complaint to name such parties in this Action to
19      the extent feasible.

20  20. Defendants committed tortious acts within the State of California and caused injury to
21      persons and property within the State each and every time Defendants unlawfully
22      recorded, or captured, a keystroke Plaintiff made on her cellular phones, and/or
23      recorded the location of Plaintiff and Plaintiff's cellular phones and/or recorded and
24      stored various other information from Plaintiff's cellular phones without Plaintiff's
25      consent.  Defendants' contacts with California constitute constitutionally sufficient
26      minimum contacts such that subjecting Defendants to personal jurisdiction in this State
27      does not offend traditional notions of fair play and substantial justice.

28  21. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because Defendant

4

Carrier IQ, Inc. is headquartered in this District and/or because the improper conduct alleged in this Complaint occurred primarily in, and was directed from, this District.

22. This Court has subject matter jurisdiction over this action and Defendants pursuant to 28 U.S.C. § 1331 because this action arises under federal statutes, namely the Federal Wiretap Act, 18 U.S.C. § 2511, the Stored Electronic Communication Act, 18 U.S.C. § 2701, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000.

## FACTUAL BACKGROUND

23. Plaintiff, Amy Roberts, during the Class Period, purchased and used a cellular phone running the Android operating system that was manufactured by HTC during the Class Period.

24. During the Class Period, Plaintiff's cellular phones contained the monitoring software developed by CIQ.

25. Plaintiff was unaware of the presence of the monitoring software on her cellular phones.

26. Plaintiff was never told by any of the Defendants of the presence of the monitoring software on her cellular phones.

27. The monitoring software was placed on Plaintiff's cellular phones by the Defendants without the knowledge, consent and permission of Plaintiff.

28. The monitoring software functioned as intended and intercepted, recorded, and logged nearly all of Plaintiff's activities and communications and transmitted some, or all, of this data to CIQ and HTC without Plaintiff's knowledge, consent or permission.

29. The monitoring software unlawfully intercepted, tracked, recorded, and logged Plaintiff's activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location, and text messaging contents and transmitted some, or all, of this data to CIQ and HTC without Plaintiff's knowledge, consent or permission.

30. Plaintiff was unaware of the presence of the monitoring software on her cellular phones until the end of November 2011, when independent security researcher, Trevor Eckhart discovered and publicized the monitoring software's existence and activities.

31. Plaintiff has been damaged by Defendants' continuous and secretive monitoring, transmission and storage of Plaintiff's cellular phone activities.

## CLASS ACTION ALLEGATIONS

## THE CLASS

32. Plaintiff seeks to represent on a nationwide class ("Nationwide Class") basis all persons similarly situated, to wit: all persons in the United States who purchased and used HTC America, Inc. ("HTC") cellular phones running the Android operating system from November 23, 2009 through November 23, 2011 ("Class Period"), which contained the software program Carrier IQ ("monitoring software") developed by Carrier IQ, Inc. ("CIQ") on the devices and unlawfully monitored, tracked, recorded, logged and transmitted the activities, keystrokes, button presses, and searches of the subject cellular phone users to CIQ and/or HTC.

33. Plaintiff also brings certain of the claims on behalf of herself and a portion of the class described as the California subclass ("California Subclass"), defined as follows:   All consumers residing within the State of California who purchased and used a HTC America, Inc. ("HTC") cellular phones running the Android operating system from November 23, 2009 through November 23, 2011 ("Class Period"), which contained the software program Carrier IQ ("monitoring software") developed by Carrier IQ, Inc. ("CIQ") on the devices and unlawfully monitored, tracked, recorded, logged and transmitted the activities, keystrokes, button presses, and searches of the subject cellular phone users to CIQ and/or HTC.

34. Excluded from the prospective Nationwide Class and California Subclass are the Defendants' employees and the employees of the law firm of Litigation Partners, P.L.

35. Plaintiff seeks certification pursuant to Federal Rule of Civil Procedure 23.

6

**NUMEROSITY**

36. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff believes in good faith that they number in the tens, if not hundreds, of thousands based on publicly available sales data for the subject cellular phones.  Therefore, the members of the Class are so numerous that joinder of all members is impractical.

37. In addition, upon information and belief, Defendants maintain their cellular phone records and monitoring software records on computerized systems.   Therefore, the number and identity of the members of the Class is readily determinable through information already in Defendants' possession that is as yet unavailable to Plaintiff.

**PREDOMINANCE AND COMMONALITY**

38. The questions of law and fact common to the claims of each Class member overwhelmingly predominate over any questions of law or fact affecting only individual members of the Class as the Defendants acted in a uniform manner to each Plaintiff and no individualized conduct by any Plaintiff or prospective Class Member affects the claims or defenses.

39. Further, the issues relating to the claims of Plaintiff do not vary from the issues relating to the claims of the other members of the Class, making a Class Action the most efficient way to resolve all claims.

40. Certification of the Class under Federal Rule of Civil Procedure 23 is supported by the following questions of law and fact common to the Class:[1]

    a. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 2511 ("The Federal Wiretap Act");

---

[1] The list of common questions of law and fact is not intended to be exhaustive and by setting forth this summary, Plaintiff does not waive her right to raise other common questions of law and fact.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

b. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 2701 ("The Unlawful Access to Stored Communications Act"); and

c. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 1030 ("The Computer Fraud and Abuse Act.")

41. Certification of the Class under Federal Rule of Civil Procedure 23 is also supported by the following consideration:

a. The relatively small amount of damages that members of the Class have suffered on an individual basis would not justify their prosecution of separate lawsuits;

b. There are no previously adjudicated actions against Carrier IQ, Inc. and HTC America, Inc. on whether Defendants' interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ and and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 2511;

c. There are no previously adjudicated actions against Carrier IQ, Inc. and HTC America, Inc. on whether Defendants' interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this

8

data to CIQ and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 2701; and

d. There are no previously adjudicated actions against Carrier IQ, Inc. and HTC America, Inc. on whether Defendants' interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ and/or HTC without Plaintiff's knowledge, consent or permission violated 18 U.S.C. § 1030.

42. Aggregating this litigation in this forum is desirable because Defendants' alleged tortious conduct has been regular and systematic in Santa Clara County, California and, upon information and belief, hundreds, if not thousands, of individuals have been harmed in Santa Clara County, California by Defendants' actions.

43. No difficulties will be encountered in the management of Plaintiff's claims on a Class basis because the Class is readily definable and the prosecution of this lawsuit as a Class Action will ensure the most efficient redress of harm and reduce the possibility of repetitious litigation.

**TYPICALITY**

44. Plaintiff's claims are typical of absent Class Members' claims because all of the members of the Class have been similarly affected by Defendants' interception, tracking, recording, and logging of their activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, and/or HTC without the consumers' knowledge, consent or permission.

**ADEQUACY OF REPRESENTATION**

45. Plaintiff's interests are common to, and coincide with, those of all absent Class Members because by proving their individual claims they will necessarily prove Defendants' liability as to the Class claims.

46. In addition, Plaintiff's interests and claims are not antagonistic to those of any other Class Members, nor are they subject to any unique defenses.

47. Plaintiff is also cognizant of, and determined to faithfully discharge, her fiduciary duties to the absent Class Members if appointed Class Representative.

48. Plaintiff will, therefore, fairly and adequately protect the interests of absent Class Members. She is also committed to the vigorous prosecution of this action and, to do so, have retained competent counsel who are experienced in Class Action litigation.

**SUPERIORITY**

49. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individually litigating whether Defendants' actions violated applicable federal laws make it effectively impossible for individual Class Members to seek redress in the courts for the wrongs complained of herein.

50. Moreover, since Plaintiff seeks an Order that Defendants' actions violated applicable federal laws, this matter can only be efficiently handled as a class-based action, since the determination of impropriety will decide that issue with respect to all members of the Class. The alternative would be for each and every other Class Member to file an individual suit for damages once the Court finds Defendants' actions to be improper and a breach of the applicable federal laws. This alternative is not only impractical and inefficient, it would likely result in a miscarriage of justice since only class treatment ensures that each Class Member receives notice of their right to damages.

51. Class treatment, therefore, ensures uniformity and consistency in results; enables the many small claims of Class Members to be brought efficiently; and will provide optimum notice and damages to Class Members.

52. The advantages of maintaining this lawsuit as a Class Action, therefore, far outweigh the alternative – the waste and expense of hundreds, if not thousands, of separate adjudications for damages. A Class Action is clearly the superior vehicle for adjudicating these claims.

**MANAGEABILITY**

53. There are no unusual difficulties likely to be encountered in the management of this action as a Class given the finite issues and limited discovery necessary to establish both the appropriateness for certification and the merits of this matter. This Court can, therefore, effectively manage the Class Action.

**COUNT I**

**VIOLATION OF THE FEDERAL WIRETAP ACT, 18 U.S.C. § 2511**

54. Plaintiff incorporates by reference paragraphs 1 - 53 above as though fully set forth herein and further alleges:

55. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the willful interception of any wire, oral, or electronic communication and the disclosure of its contents to anyone apart from its intended recipient.

56. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

57. Defendants CIQ and HTC placed monitoring software developed by CIQ on Plaintiff's cellular phones in order to intercept, monitor, track, record, log and transmit the contents of Plaintiff's electronic communications to unauthorized third parties, including the activities, keystrokes, button presses, and searches of Plaintiff.

58. Neither the Plaintiff nor members of the Class consented to nor were aware that the Defendants were violating the Federal Wiretap Act, as well as each Defendant's own, individual privacy policies, and tracking Plaintiff's activities, keystrokes, button presses and searches.

59. The intercepted data, including but not limited to, the activities, keystrokes, button presses and searches of Plaintiff, are "communications" within the meaning of the Wiretap Act.

60. Defendants intentionally and willfully placed the monitoring software on Plaintiff's cellular phones and, thus, intentionally and willfully intercepted the electronic communications of Plaintiff and other members of the Class.

11

61. Plaintiff is a person whose electronic communications were intercepted within the meaning of Section 2520.

62. Section 2520 provides for preliminary, equitable and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each violation, actual and punitive damages, reasonable attorneys' fees, and disgorgement of any profits earned by Defendants as a result of the above-described violations.

63. Plaintiff and other members of the Class were harmed by Defendants' violations, and are therefore entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages, and reasonable attorneys' fees.

**COUNT II**

**VIOLATION OF THE STORED ELECTRONIC COMMUNICATIONS ACT**

**18 U.S.C. § 2701**

64. Plaintiff incorporates by reference paragraphs 1 - 53 above as though fully set forth herein and further allege:

65. The Stored Electronic Communications Act ("SECA") provides a cause of action against a person who intentionally accesses without authorization a facility through which an electronic communication service is provided or who intentionally exceeds an authorization to access that facility and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in storage in such a system.

66. "Electronic storage" is defined in the statute to be "any temporary, immediate storage of a wire or electronic communication incidental to the electronic transmission thereof."

67. Plaintiff's cellular telephones are facilities through which electronic communications services are provided under SECA.

68. Defendants intentionally placed monitoring software on Plaintiff's cellular phones that accessed their stored electronic communications without authorization, and thus violated SECA.

69. Plaintiff and other members of the Class were harmed by Defendants' violations, and are therefore entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages, and reasonable attorneys' fees.

**COUNT III**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

70. Plaintiff incorporates by reference paragraphs 1 - 53 above as though fully set forth herein and further allege:

71. Plaintiff's cellular telephones are protected computers under the Computer Fraud and Abuse Act.

72. Plaintiff's phones were intended to be used and were used for interstate commerce or communication.

73. Defendants knowingly caused the transmission of a program, information, code, or command to and from the Plaintiff's cellular telephones, and as a result, of such conduct, intentionally caused damage without authorization, to a protected computer.

74. Defendants, therefore intentionally accessed a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer in violation of the Computer Fraud and Abuse Act.

75. Plaintiff was directly and proximately damaged in the amount she paid for her cellular phones, as well as the repeated violations of her privacy.

76. Defendants' unlawful access to Plaintiff's computers and communications have therefore caused damages, as well as irreparable injury to Plaintiff's privacy. Unless restrained and enjoined, Defendants are likely to continue to commit such acts. Plaintiff's remedies at law are not adequate to compensate for these inflicted and threatened injuries, entitling Plaintiff and the Class to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

**COUNT IV**

**CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, et seq. (UCL)**

77. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

78. Plaintiff is entitled to assert claims against Defendants under California law because Carrier IQ is based in California and because the conduct at issue in this action either occurred in California by virtue of the centralized business practices of Carrier IQ, or arose as the result of policies and procedures that originated from Carrier IQ's home offices in California.  Further, the wrongful scheme at issue herein was planned and implemented by the Defendants in California.

79. The majority of wrongful acts complained of emanated from or occurred in California including, without limitation, the development of the Carrier IQ software at issue, and the plan to secretly embed that software in mobile devices without the knowledge of device users.

80. California Business & Professions Code §§ 17200 et seq. (the "Unfair Competition Law" or "UCL") is a consumer protection statute that prohibits any "unlawful, unfair or fraudulent business act or practice."  The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* § 17203.

81. Defendants engaged in *unlawful* conduct in violation of the UCL in that the acts and practices alleged herein violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, the California Computer Crime Law and the Stored Communications Act among other statutes.

82. Defendants engaged in *unfair* business acts and practices in violation of the UCL by, among other things: (a) secretly embedding software in mobile devices that is designed to provide Defendants with information about the user's private communications; (b) failing to provide notice that such software is embedded on mobile devices; (c) failing to provide a mechanism for mobile device users to remove such software from mobile

14

phones or to render it inoperable; (d) failing to disclose that private information of mobile device users would be collected, stored and/or used for commercial purposes; and (e) failing to remedy its violations of law upon reasonable notice.

83. The foregoing acts and practices violate the right of privacy protected by the California Constitution, were likely to mislead the public as to the privacy of their personal communications, and were unjustified by any legitimate business need.

84. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct described herein.

85. Defendants engaged in *fraudulent* business acts and practices in violation of the UCL in that Defendants' collection and dissemination of the information regarding their customers' cell phone use was knowingly hidden and concealed.

86. By reason of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class and should be required to make restitution to the Plaintiff, the general public and the members of the Class, and/or be enjoined from continuing in such practices, pursuant to §§ 17203 and 17204 of the California Business & Professions Code.  Among other things, the Defendants charged the Plaintiff more for the devices with the Carrier IQ software embedded than they would have charged for the same devices without the hidden software.  Further, some Defendants, or all of them, received compensation in exchange for secretly recorded information.

87. The foregoing acts and practices have caused substantial harm to the Plaintiffs, the general public, and the members of the class.  As a result of these violations and unlawful, unfair, and fraudulent business practices, Plaintiff suffered injury in fact and lost money, including but not limited to, payment of amounts greater than the fair value of the products at issue without the hidden software.

88. Pursuant to California Business and Professions Code § 17200 et seq., Plaintiffs are entitled to enjoin Defendants' practices.

89. Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover reasonable attorney's fees, costs, and expenses incurred in bringing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Determine that this action is a proper Class Action under Rule 23 of the Federal Rules of Civil Procedure;

B. Award compensatory damages, including statutory damages where available, in favor of Plaintiffs and the other members of the Class against Defendant for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Order the Defendants to disgorge all profits earned from their illegal wiretapping;

D. Enter declaratory and injunctive relief, permanently restraining Defendants, and their officers, agents, servants, employees and attorneys, from monitoring, tracking, recording, logging and transmitting the activities, keystrokes, button presses, and searches of Plaintiffs and members of the Class and otherwise violating Defendants' policies with their consumers;

E. Award Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

F. Award exemplary, treble or punitive damages;

G. Award reasonable attorneys' fees and costs; and

H. Grant Plaintiff such further relief as the Court deems appropriate.

**JURY TRIAL DEMAND**

The Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted by:

DATED: January 18, 2011

McNULTY LAW FIRM

By: _____
Peter J. McNulty
Brett L. Rosenthal
Attorneys for Plaintiff and
Members of the Class

16